Good morning. May it please the Court, Charles Bonneau, appearing for Petitioner and Appellant Terry Kitchen. Your Honors, this appeal addresses the narrow issue of equitable tolling for a habeas petitioner who is developmentally delayed and lacks the ability to fill out the relevant State and Federal habeas corpus forms within the time limits, relevant time limits. Well, counsel, if the Court were to ignore any period of time during which Mr. Kitchen was not represented and focus only on the time after he had counsel, he's still untimely. So the other question is, is there a way to make it so that he's still untimely to retain counsel and then start the clock at that point? Correct. Yes. That's the issue today. All right. So for purposes of argument, it's not necessary for you to discuss what the situation was with Mr. Kitchen when he was by himself and focus only on the period of time during which he was represented. That's what I intend to do. Isn't that correct? That's what I intend to do. Very well. Okay. The district court decided this issue not by confronting his competence or lack of competence, but by just pointing to the date of the end on which counsel was retained. The district court supposes that the habeas statutory time limit clock could have been switched off by filing a placekeeper petition and then requesting stay in abeyance. And that's the portion of the lower court judgment that I'd like to take issue with today. I'd like to pose the question, what is it that I would have had to state in this placekeeper Federal petition, presumably allege that he was not mentally competent to enter his guilty plea? But how? Well, under Ninth Circuit authority, if he's not competent to assist in a capital case, the court has to stay the proceedings. So admittedly, this is not a capital case, but wouldn't that be at least a trigger in counsel's mind, the idea that if there is a problem with this fellow's competence, it should be addressed at some stage? As soon as counsel knows about it. And the problem here is that we didn't know about it. And for me to file a placekeeper petition at the time the district court feels that I could have or should have would have been a fraud on the court. I had no basis to say that. I might as well have said that he was exonerated by DNA. I had no idea that there was such a thing. What was, in fact, we had no idea that he had been examined by a psychologist in Santa Rosa in 2000. I didn't know that. A competent defendant might have told me that, but he didn't. Counsel, how could it be, how could it be that nobody who had ever been, who had not trial counsel, is that right, originally? You were brought in after he was convicted. That's correct. How could it be that no trial counsel, nobody who's ever worked with him, no judge who's ever seen him before, that nobody ever, it never dawned on anybody that he might not be competent to assist in his own defense? Well, first of all, the State called the trial attorney who testified at the hearing on this matter in district court. He said he didn't know that. He felt he was a little slow, but he didn't detect any big problems, didn't have him examined, didn't realize that he had been examined, didn't realize that the school records were indicating a problem. So it was just a lack of research as to how that happened. It can very well happen if you, often if you speak to a developmentally delayed person, it's hard to, sometimes it's hard to know. I think that's what we have here. Okay. The test for competency, and I'm going to ask you a question about Indiana v. Edwards in a moment. Yes. I'll follow up on your brief. But ignoring any change in the law that Indiana v. Edwards may have introduced, the law now is that the competence to waive rights, competence to plead guilty, competence to do virtually anything, is the same test. Can the person interact with his attorney and understand the charges? Are you suggesting that a person could be incompetent in that sense, and it never in all the interaction this fellow had with the criminal justice system, it never came up? Yes, I am suggesting that. If someone had suggested, in California we call it 1368, if someone had suggested that, then I would have at least had a clue that that's where we should be looking. They should have had him examined. He was 14 years old when this happened. And he should have been examined. They should have at least known that he had already been examined and that there was a report on this issue. No one did that. Counsel, isn't the latest, I mean, at the latest, counsel knew of the factual predicate for Mr. Kitchen's claim on March 27, 2006, the day he scheduled a kitchen to be reevaluated by Dr. Doty? No. Why not? No. It was May 7, 2006. That's when she faxed me the report. I didn't know. Well, that's the day she faxed the report. But what caused the counsel to have him reevaluated? What caused me to have him reevaluated? I found out that he had already been evaluated. I talked to the parents. I said, this is a possibility there's a problem here. And so we hired the Dr. Doty to go up to Susanville and speak to him and have him take a battery of tests and then write a report. And she faxed the report to me on May 7, 2006. And you're saying that there's no way, because the standard is not when the factual predicate was discovered, but when it could have been discovered. You're saying there's no way it could have been discovered prior to May 7? Not given the fact that Mr. Kitchen himself is not competent to convey this information to me. And under Bills v. Clark, the court has to look to his ability to communicate with me. And when that's impaired, then there may be tolling. That's a situation we have here. Even so, counsel, why did a habeas corpus not get filed until April 12, 2007? That was filed, I think, the day after the California Supreme Court denied review and within one year of the date that the Doty report was faxed to me. But not within one year of the date on which you requested a report from Dr. Doty? No, no. That was earlier. But I had to wait until I got the report. For me to file in the district court, as has been suggested, would be a fraud on the court. I could lose my license for doing this. That has happened. Counsel, when did you or any other counsel learn of Dr. Doty's report? As far as I can tell, no one knew. The other attorneys never found out about it. I've never seen any mention in the file. They knew he'd been arrested as a juvenile and presumably evaluated, but they never examined that. I believe the district court found that sometime before October 26th of 2005, I don't know whether it was you or whether it was somebody else, learned of the existence of the 2000 report from Dr. Doty. Why didn't that put you on notice? That was... I'm using you broadly and not you personally. I may have. At some point, I was talking to the parents. At some point, I saw the report that she had produced when he was 13 years old. And it had to do with other matters. It wasn't really focused. I needed to find out whether he was competent to enter the plea several years later when I think he was 16 by that point. And so now we're doing a looking backwards type exam. And she had to be hired and go to Susanville for that. And that's the first time, though, that that whole issue arose for you, that that concern, that competency arose. Is that correct? During conversations with the parents, during then gradually we became aware that there had been a psychologist at some point. And then we did the investigation. This is all within what we call reasonable diligence to go back and find this person, this psychologist, and have her brought up to date as to his current status and his status at the time of the negotiated guilty plea, which I think was several years after she had examined him, last examined him. When you first learned of Dr. Doty's existence, did you contact her by phone and talk to her? Well, I'm sure that's part of what I did. Yes, of course. And did you ask her questions that the answers to which might suggest the possibility of some kind of defense or some kind of habeas claim? Well, obviously that's the kind of process of investigation that you start to enter into. You start to get, yes, some idea. Did I have enough to go to Federal court and say this man was incompetent three years later or four years later after she examined him based on my phone call with her? No. No. Thank you. Thank you, counsel. Mr. Eldridge. Actually, it's Justin Riley on behalf of the warden. I filed something recently. May it please the Court? I'm sorry. Mr. Riley? Yes, Justin Riley, R-I-L-E-Y. The district court's denial of equitable tolling here was consistent with Bills even before Bills was issued. The limited issue before the district court was whether or not the mental, the alleged mental incompetence actually caused the untimely filing. Most of the information you've heard here today was not presented to the district court because the petitioner didn't present any evidence of causation. The district court actually ruled on causation. There's two prongs of Bills. There's the mental incompetence arising in extraordinary circumstances, and then the second prong is that the mental condition actually caused the untimely filing. Here the district court ruled on what would have been the second prong ruled before it was shown. That's because the appellant here did not present any evidence of causation to the district court. The only evidence that was presented at the evidentiary hearing was that of mental incompetence. Here appellant is attempting to argue that mental incompetence alone can be the foundation for equitable tolling without a showing of causation. If this Court would like me to discuss what counsel should have done later, I can do that. I think the questions were very apt, but that wasn't presented to the district court below. So can you answer, because Mr. Bonneau indicated during his argument that it would be wrong for him to file something in Federal court at the time that has been suggested. Sure. What's your response to that? Well, in Pace v. DeGuglielmo, which came out just days after counsel was retained, Pace, the Supreme Court in Pace, alerted and put the bar on notice that protective petitions were possible and issued strong language such as the end of the matter. Untimely filings in State court were the end of the matter. And so when counsel learned of the possible claim, he waited, as Your Honor indicated, over a year to file his Federal petition. Diligence requires asking at every stage, why didn't you file it now? Why didn't you file it now? And some of the questions asked by the panel were apt. Why didn't he file it when he first learned? When he got the report, why didn't he file it? It was six months post-report that he filed a Federal petition. Diligence for equitable tolling doesn't give you an extra year. It asks, why don't you file it immediately? And so that would be my response. Well, he says he couldn't have because it wouldn't have been enough. His license could have been taken away if he had filed something. Well, that's the point. After the report came to him, the report was faxed to him on May 7th, I believe. I don't have the exact date. He still waited an extra six months. Diligence for equitable tolling requires more. Requires more. He was on notice because the State court denied his State habeas petition in Superior Court as untimely. At that point, Pace had come out. Indicating that such an untimely filing is a huge red light and you better run to Federal court with a protective petition. The mental incompetence here wasn't the cause of any of the delay. It was run-of-the-mill investigation and oversight, as the district court found. Appellant was aware of the causation requirement. There was discussion at the evidentiary hearing, discussion in the pleadings below, that he must show his mental condition caused, actually caused the untimely filing. And as the district court found, there was just no showing that the mental condition caused the untimely filing. I think counsel's theory logically is, my man is incompetent. Yes. If you're incompetent, you can't assist your attorney and understand the charges. Part of assisting your attorney is providing factual background for any potential habeas case. Ergo, if I can convince the court that he's incompetent, I win both prongs, because causation is subsumed within competence. I mean, that seems to be the theory. I understand that, but that flies in the face of the bill's requirement. Both the totality of the circumstances for causation required by bills and the fact that Petitioner bears the burden of showing he's entitled to equitable tolling, he can't just show one of the prongs and just throw up his hands and say, okay, well, that must necessarily mean I meet the second prong. He has to show. He has the burden of proof. He presented no evidence on causation. Well, one of the things that's confusing me about this case, and perhaps both counsel can address it, typically, equitable tolling only becomes relevant after the trigger triggering event that starts the statute running. The triggering events can either be the exhaustion of remedies in the State court followed by the passage of the time or a filing of a petition for cert in U.S. Supreme Court, or first learning of the factual predicate for the claim. Here it's unclear to me whether the contention here is that Mr. Kitchen and counsel knew the factual predicate for the claim, i.e., I was too incompetent to plead guilty, in which case the statute of limitations would have run, began to run at that point, or whether the predicate was known earlier but for some reason told. And that's what the problem is. If we assume that his argument really is that he, the factual predicate for the claim, I was too incompetent to plead guilty, was not known until Dr. Doty filed the report, then the statute of limitations would have begun at that point in time without any question of equitable tolling. What is your, assuming that's his argument, what is your response? I'm actually glad you asked that question. I wanted to make this distinction later in my argument. A newly discovered factual predicate is anticipated by the AEDPA statute in 2244 D1D. And because there is a statutory provision for a newly discovered factual predicate, it's my argument that this Court is excluded in its equitable power from granting equitable tolling for that very reason. Because, and also, I'm sorry, also, he didn't raise that ground below, so he's waived it pursuant to rules of appellate procedure. But assuming all of that, he can't meet the newly discovered factual predicate requirement because, as Justice, as Your Honor mentioned, he learned of the factual predicate more than a year from the time he filed his Federal petition. And the standard for newly discovered factual predicate is when you know the facts, not their legal consequences. So not surprisingly, he didn't raise newly discovered factual predicates under Subsection D1D in district court. He would have failed. And because he would have failed under that, the only option for tolling available to him is equitable tolling. It's my argument that because D1D covers this situation, equitable tolling isn't available anyway for newly discovered factual predicate. In addition, he can't meet newly discovered factual predicate because it was more than a year from the time he discovered the facts that would have given rise to his claim. Was there at any stage a motion in Federal district court to stay proceedings because of present incompetence of Mr. Kitchen? No. So would it be fair, then, to infer that at no point has the question of Mr. Kitchen's competence been litigated? His actual competence to date? His actual competence to do anything. It was a hotly contested issue. I'm informed and I believe that the court has been provided with the evidentiary hearing transcript from the district court. It was a hotly contested issue whether or not he was incompetent as of the time he should have filed his petition. I believe it was between 2003 and 2004. His competence at other times was addressed in terms of that relevant time period, 2003, 2004, but there was no determination made as to his present competence, I believe. I see time is running short. I note again that the only issue raised before the district court was equitable tolling and causation. No evidence of causation. And for the other reasons that I've mentioned, any sort of tolling isn't available here. I'd love to answer any other questions. Thank you. Thank you. Mr. Riley. Mr. Bono. Mr. Bono. Do you have some time reserved? Thank you, Your Honor. Your Honor, Mr. Kitchen's disability prevented his communication with counsel. His proper presentation of this claim attacking his guilty plea. And I don't think that the United States Supreme Court ever contemplated in its wildest dreams that we would have a deluge of federal filings for claims like this where I only knew that he was examined by a juvenile court psychologist when he was 13. That would just be an unacceptable reason to move forward. And if that's the standard, then we're going to have a proliferation of groundless, baseless federal petitions just filed in the bare hope that we'll be able to prove it someday. Counsel. Oh, excuse me. You said, did you recognize his mental disability as soon as you met him? I mean, because you're saying it's quite profound. I didn't meet him. He was housed in Susanville. I didn't meet him there. Well, who was your first interaction with him? I don't remember. But it was, I think Dr. Doty visited him first. I don't think I met him until after that point at some point. Well, at what point? I mean, before? I don't remember. But if this is the Court's question, I wasn't particularly, it didn't hit me in the face that he was competent or incompetent. It didn't, it wasn't a revealing conversation whenever it happened. And I don't think it was revealing for the trial attorneys, because they testified they didn't know. Counsel, in your brief, you note Indiana v. Edwards, where the Supreme Court said that the mental functioning of the defendant can be a factor in determining the assertion of his Feretta rights, whether he can represent himself at trial. Prior to that time, the Supreme Court had been clear that there was one and only one test for competence, and it covered all circumstances under which competence was relevant. Yes. Are you suggesting that Indiana v. Edwards enables the Court to revisit the old Ninth Circuit rule that a person has to have a higher standard of competence to waive rights, plead guilty, do anything of that nature, than merely his ability to help his attorney and understand what the charge is? I'm not sure all the permutations of this, but Indiana v. Edwards decouples the competence standard from any single standard and says that there are multiple standards depending on the task at hand. This Court adopted that in this precise context in Bills v. Clark, and that's what we were asking for in our briefing, and that's what Bills v. Clark held. So I think to the extent that these standards are being decoupled, we think that that's going to be focused, as we tried to do at the evidentiary hearing here, and actually look at the state and federal habeas forms, correlate those with the mental capacity of this particular defendant. And that's the question that should be before the district court, and we got sidetracked with this issue of retaining counsel improperly, in my view, because I should not be obligated to file a federal petition unless and until I know that I have grounds for it, and I didn't until May 7th, 2006. Okay. Thank you, Mr. Bono. Thank you. We appreciate the argument of both counsels. Kitchen v. Felker's order is submitted.
judges: Bybee, Murguia, Cjj Singleton (Alaska), Dj